IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>SCOTT LEE KOTH,<br><br>Defendant. | CR. NO. 12-00199 JMS<br><br>ORDER DENYING DEFENDANT'S MOTION TO REDUCE SENTENCE (COMPASSIONATE RELEASE), ECF NO. 58 |

### ORDER DENYING DEFENDANT'S MOTION TO REDUCE SENTENCE (COMPASSIONATE RELEASE), ECF NO. 58

#### I.   INTRODUCTION

Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), pro se Defendant Scott Lee Koth ("Defendant" or "Koth") moves for compassionate release from Federal Correctional Institution Edgefield ("FCI Edgefield"). ECF No. 58. He argues that compassionate release is warranted because the District of Hawaii lacks a residential reentry center ("RRC"). *See id.* at PageID # 265. For the reasons stated below, the court DENIES Defendant's Motion.

#### II.   BACKGROUND

Defendant, currently 51 years old, is incarcerated at FCI Edgefield with a projected release date of November 12, 2022. *See* https://www.bop.gov/inmateloc/ (last visited February 4, 2022). To date, Defendant has served

approximately 119 months in custody.  *See* Presentence Investigation Report ("PSR"), ECF No. 34 at PageID # 116 (stating that Defendant has been detained since March 5, 2012, the date of his transfer to federal custody).

On May 15, 2012, Defendant pled guilty without a plea agreement to an Indictment charging him with knowingly and intentionally possessing with intent to distribute 50 grams or more of methamphetamine, its salts, isomers and salts of its isomers, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A).  PSR ¶¶ 1, 5, *id*. at PageID # 118; *see also* ECF No. 1 at PageID ## 1-2 (Indictment).  On June 3, 2013, Defendant was sentenced to a term of 156 months imprisonment to be followed by an eight-year term of supervised release, ECF No. 32 at PageID # 107.  *See also* ECF No. 33 at PageID ## 109-11.  On October 3, 2016, Defendant's sentence was reduced to 133 months imprisonment based on United States Sentencing Guideline ("Guideline") Amendment 782.  ECF No. 40 at PageID # 151.

On September 19, 2021, Defendant submitted a handwritten letter to the court requesting compassionate release because "Hawaii doesn't have an RRC program [and his] case manager has recommended [that he be released to such a program]."  ECF No. 54 at PageID # 247.  Construing the request as a motion for compassionate release, on October 12, 2021, the court denied the request for lack of exhaustion of administrative remedies.  *See* ECF No. 57 at PageID # 264.

On October 18, 2021, Defendant submitted a request for compassionate release to FCI Edgefield's warden, asserting the absence of an RRC in Hawaii as the sole basis of his request. ECF No. 58 at PageID # 266. Defendant did not receive a response from the warden. *See id*. at PageID # 265. On November 18, 2021, thirty-one days after submission of his request to the warden, Defendant filed the instant Motion, arguing that both the lack of an RRC in Hawaii and FCI Edgefield's "Code Red" status due to COVID-19 constitute "extraordinary and compelling reasons" justifying release. ECF No. 58. The Government filed its Opposition on December 14, 2021. ECF No. 60.

On January 7, 2022, the court directed Defendant and the Government to file supplemental briefing. ECF No. 61. On January 21, 2022, the Government filed its response, ECF No. 62, and on February 1, 2022, the court received Defendant's supplemental briefing, ECF No. 63.

The court decides the Motion without a hearing pursuant to Local Rule 7.1(c).

### III.  DISCUSSION

**A.    Legal Standard**

Defendant moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, which provides as relevant:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable, if it finds that—
>
>     (i) extraordinary and compelling reasons warrant such a reduction;
> . . . .
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

Thus, the court may reduce Defendant's sentence if (1) Defendant has exhausted the required administrative remedies; (2) the court determines, after considering the applicable section 3553(a) factors, that Defendant has shown that "extraordinary and compelling reasons" warrant the reduction; and (3) the reduction is consistent with any applicable Sentencing Commission policy statements. Here, the parties agree that Defendant has exhausted his administrative remedies. *See* ECF No. 58 at PageID ## 265, 266; ECF No. 60 at PageID # 277.

The United States Sentencing Commission's policy statement, Guideline § 1B1.13, was promulgated before the First Step Act provided defendants the ability to file motions for compassionate release on their own behalf (and, without a quorum, the Sentencing Commission has been unable to amend the

Guidelines post-First Step Act). The Ninth Circuit has therefore determined that the Guidelines lack any policy statement "applicable" to a defendant-filed motion for compassionate release. *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). This court is thus empowered to consider any extraordinary and compelling reason that warrants a sentence reduction. In making this determination, "[t]he Sentencing Commission's statements in [§ 1B1.13] may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id*.

**B.     No Extraordinary and Compelling Reasons Warrant Release**

Defendant bears the burden to establish extraordinary and compelling reasons that warrant compassionate release. *See, e.g.*, *United States v. Bogema*, 2020 WL 6150467, at *3 (D. Haw. Oct. 20, 2020). As stated above, Defendant asserts that the lack of an RRC in Hawaii and FCI Edgefield's "Code Red" status due to the COVID-19 pandemic are "extraordinary and compelling reasons" justifying compassionate release.[1] The court considers each basis in turn.

---

[1] Although Defendant did not assert the COVID-19 pandemic as a basis in his request to the warden for compassionate release, *see* ECF No. 58 at PageID # 266, the Government has not argued that Defendant failed to exhaust on this ground, *see* ECF No. 60 at PageID ## 275, 277, 279-82. Thus, the court considers FCI Edgefield's "Code Red" status due to the COVID-19 pandemic as a basis for Defendant's Motion. *See United States v. Keller*, 2 F.4th 1278, 1282 (9th Cir. 2021) (clarifying that the exhaustion requirement contained in 18 U.S.C. § 3582(c)(1)(A) is "a mandatory claim-processing rule that must be enforced *when properly invoked*" (emphasis added)).

1. ***Absence of an RRC in Hawaii***

Defendant argues that the lack of an RRC in Hawaii is an extraordinary and compelling reason justifying release because "[his] case manager has recommended [him] for one year [at a] halfway house," and he became eligible for placement in an RRC on November 12, 2021. ECF No. 58 at PageID # 265; *see also* ECF No. 62-2 at PageID # 300 (July 18, 2021 Institutional Referral for Community Corrections Center Placement). Koth further argues that he should be granted either time-served or released to home confinement due to the absence of an RRC in Hawaii. *See* ECF No. 58 at PageID # 266. Despite his assertions, Koth fails to demonstrate an extraordinary and compelling reason justifying his release.

Section 3624 of Title 18 of the United States Code governs the placement of inmates into community confinement. Under 18 U.S.C. § 3624(c)(1),

> [t]he Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

*See also* 28 C.F.R. § 570.20(a) (defining pre-release community confinement to include "residence in a community treatment center, halfway house . . . or other community correctional facility (including residential re-entry centers)").

And 18 U.S.C. § 3624(c)(2) provides that

> [t]he authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months. The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph.

Both paragraphs of § 3624 require that such placement be authorized by the Bureau of Prisons ("BOP") "to the extent practicable." *See* 18 U.S.C. § 3624(c)(1)-(2). Thus, placement in a halfway house or in home confinement is not mandated. Indeed, "[n]othing in the language of section 3624(c) mandates that all prisoners pass through a community treatment center en route to free society." *United States v. Laughlin*, 933 F.2d 786, 789 (9th Cir. 1991) (rejecting a defendant's argument that "the government's failure to coordinate his release through a community treatment center violated 18 U.S.C. § 3624(c)"); *see United States v. Phillips*, 2021 WL 149675, at *1, *3-4 (D. Haw. Jan. 15, 2021) (finding that a defendant's lack of ability to serve time in a halfway house in the District of Hawaii due to the absence of such a facility or program is not an extraordinary and compelling reason justifying release under 18 U.S.C. § 3582(c)(1)(A), even when a defendant had "a little more than half a year" left of incarceration).

Further, once sentenced to a term of imprisonment, a defendant is "committed to the custody of the Bureau of Prisons until the expiration of the term

7

imposed." 18 U.S.C. § 3621(a). And it is the BOP—not a federal court—that holds the authority to "designate the place of the prisoner's imprisonment." 18 U.S.C. § 3621(b); *see also Sacora v. Thomas*, 628 F.3d 1059, 1067 (9th Cir. 2010) ("[T]he ultimate point of reference for RRC placement decisions under § 3624(c) is the set of factors set forth in § 3621(b) . . . ."); *United States v. Ceballos*, 671 F.3d 852, 855 (9th Cir. 2011) (per curiam) ("'Authority to determine place of confinement resides in the executive branch of government and is delegated to the Bureau of Prisons.'" (quoting *United States v. Dragna,* 746 F.2d 457, 458 (9th Cir. 1984) (per curiam))).

    Here, BOP has made efforts to "locat[e] [] viable RRC housing for [Defendant]," ECF No. 62-1 at PageID # 298, but it has determined that "there are no options" for such placement and Defendant is "not eligible for federal location monitoring . . . due to [his] history of violence," ECF No. 63 at PageID # 307. *See also* ECF No. 62 at PageID # 293 ("BOP counsel has advised that a suitable RRC has not yet been identified for Koth" and U.S. Probation has indicated that "[Koth's] prior conviction for Terroristic Threatening in the First Degree . . . weighed heavily against his consideration [for home confinement on Oahu]."). Further, Defendant indicates in his supplemental briefing that he is not planning to return to Hawaii upon release from incarceration. *See* ECF No. 63 at PageID # 304 ("My release plan is to relocate to [Texas] for a better job opportunity."). In short,

8

because the BOP has apparently determined that it is not "practicable" to release Defendant to a halfway house or home confinement in Hawaii, Defendant has failed to demonstrate extraordinary and compelling reasons justifying release.

Further, if the court granted Defendant's request, then almost all defendants that would otherwise be eligible for halfway-house release in Hawaii would be entitled to early release from custody. As the United States correctly states, the lack of a residential reentry program in Hawaii is not extraordinary because "the circumstance is shared by literally every federal inmate seeking to return to Hawaii." ECF No. 60 at PageID # 278.

The court understands that pursuant to § 3582(c)(1)(A)(i), it has discretion to grant Defendant's Motion. But based on a totality of the circumstances, the court determines that Defendant has failed to establish that the absence of an RRC in Hawaii is an extraordinary and compelling reason justifying release.

### 2. *COVID-19 Pandemic*

Turning to Defendant's next argument, he alleges that, "as of November 16[, 2021]," FCI Edgefield is operating at "Code Red" due to the COVID-19 pandemic. ECF No. 58 at PageID # 265. Defendant offers no further argument regarding this basis for his Motion—he provides nothing more about FCI Edgefield's conditions and includes no information or records indicating his

9

physical or medical conditions (e.g., any conditions increasing his vulnerability to COVID-19, or whether he has contracted, recovered from, or been vaccinated against the virus). To the extent Koth argues FCI Edgefield's "Code Red" status as a basis for compassionate release, his argument fails.

The COVID-19 pandemic alone does not constitute an extraordinary and compelling reason for release. *See, e.g.*, *United States v. Drummondo-Farias*, 460 F. Supp. 3d 1008, 1014 (D. Haw. 2020) (explaining that "'[g]eneral concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement'" (quoting *United States v. Eberhart*, 448 F. Supp. 3d 1086, 1090 (N.D. Cal. 2020))); *see also United States v. Brooks*, 491 F. Supp. 3d 33, 37 (W.D. Pa. 2020); *United States v. Mitchell*, 471 F. Supp. 3d 1130, 1138 (W.D. Wash. 2020).

Further, Defendant has not shown that the hardships he faces at FCI Edgefield differ significantly from any other BOP facility.[2] At present, BOP reports that 98 out of 98 facilities are operating at Level 3 (presumably, "Code Red"), with "intense modifications" due to the COVID-19 pandemic. *See* https://

---

[2] To the extent Defendant argues that compassionate release is warranted based not on the future risk of contracting COVID-19, but because he has experienced difficult times while incarcerated at FCI Edgefield during the COVID-19 pandemic, the circumstance he describes, *see* ECF No. 58 at PageID # 265 ("FCI Edgefield is at [C]ode Red for COVID-19"), does not constitute an extraordinary and compelling reason justifying release.

www.bop.gov/coronavirus/ (last visited February 4, 2022).  Stated differently, *every* facility is currently operating with intense modifications; no facilities are operating at lower modification levels, whether Level 2 (moderate modifications) or Level 1 (minimal modifications).  *See id.*

Additionally, at present, BOP reports that thirteen inmates and zero staff members at FCI Edgefield[3] have "confirmed active cases" of COVID-19.  *See* https://www.bop.gov/coronavirus/ (COVID-19 resource page) (last visited February 4, 2022).  The BOP reports that of 1,722 inmates tested at FCI Edgefield, 360 have tested positive for COVID-19 over the course of the pandemic, with three additional tests pending.  *See id.*  Although the court recognizes that COVID-19 cases could rise again at FCI Edgefield, the institution has shown great improvement over the past months.  And as COVID-19 vaccinations continue to be administered, the threat of a COVID-19 outbreak will continue to decrease over time.[4]

Defendant has not established that FCI Edgefield's "Code Red" status during the COVID-19 pandemic is an extraordinary and compelling circumstance for purposes of compassionate release.

---

[3] FCI Edgefield currently houses 1,522 inmates.  *See* https://www.bop.gov/locations/institutions/edg/ (last visited February 4, 2022).

[4] As of February 4, 2022, FCI Edgefield has completed full inoculations of 1,412 inmates and 261 staff members.  *See* https://www.bop.gov/coronavirus/ (COVID-19 resource page) (last visited February 4, 2022).

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Reduce Sentence (Compassionate Release), ECF No. 58, is DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, February 4, 2022.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*United States v. Koth*, Cr. No. 12-00199 JMS, Order Denying Defendant's Motion to Reduce Sentence (Compassionate Release), ECF No. 58